Filed 9/25/23 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RYAN ACCURSO,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>IN-N-OUT BURGERS,<br>　　　Defendant and Respondent;<br><br>CALIFORNIA LABOR AND WORKFORCE DEVELOPMENT AGENCY ex rel. TOM PIPLACK et al.,<br>　　　Movants and Appellants. | A165320<br><br>(Sonoma County Super. Ct. No. SCV-268956)<br><br>ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

BY THE COURT[*]:

　　　Appellants have filed a "Request for Clarification" asking this court to modify the opinion filed in this appeal on August 29, 2023.  For purposes of clarification, the court orders that the opinion be modified as set forth below.  Some of the following modifications are adopted upon appellants' request, and some are adopted sua sponte.  To the extent appellants seek modifications to the opinion that are not reflected in this order, their request is denied.

　　　1.　On page 3, in footnote 2, delete the following sentence:

---

[*] Brown, P. J., Streeter, J., Goldman, J.

1

The court in *Taylor* initially stayed that action pending completion of proceedings in *Piplack*, but plaintiff Taylor, represented by the same counsel as plaintiff Piplack, later amended her complaint to withdraw those allegations, which led to the court lifting the stay.

Insert in place of the deleted sentence indicated above, continuing within the same footnote, the following substitute language:

The court in *Piplack* initially stayed that action pending completion of proceedings in *Taylor*, but plaintiff Taylor later amended her complaint to withdraw those allegations, which led the *Piplack* court to lift its stay.

2.  On page 5, at the end of the first partial paragraph at the top of the page, add the following sentence as the new concluding sentence of that paragraph:
    So far as we are aware, despite these statements no motion to approve a settlement was ever made.

3.  On page 7, in the first full paragraph, add the following new sentence at the beginning of the paragraph:
    Under section 387, subdivision (b), "[a]n intervention takes place when a nonparty, deemed an intervenor, becomes a party to an action or proceeding between other persons" by filing an application for such status.

4.  On page 7, in the first full paragraph, after the new sentence that was added pursuant to #3 above, and at the beginning of what is now the second sentence of the paragraph, add the phrase "Following the federal model," change the word "Section" to "section", and delete the word "now", so the introductory portion of that sentence reads:
    Following the federal model, section 387, subdivision (d) provides:

5.  On page 7, in the first full paragraph, in the first sentence of the quoted language in the paragraph, italicize the word "shall" so that portion of the quoted language reads:
    "(1) The court *shall*, upon timely application, permit a nonparty to intervene in the action or proceeding [where] . . . [¶] . . . [¶]

6.  On page 7, in the first full paragraph, in the last sentence of the quoted language in the paragraph, italicize the word "may" and add the parenthetical phrase "(Italics added.)" after the end of the

quotation, so the concluding portion of the quoted language and the following parenthetical read as follows:

> (2) The court *may*, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both." (Italics added.)

7. On page 8, in the first partial paragraph, after the parenthetical citations ending with "*Belt Casualty Co. v. Furman* (1933) 218 Cal. 359, 362.)", add the following new sentence and citation:

> "The law abhors multiplicity of actions, consuming the time of the court and entailing additional [public] expense . . . ." (*Elms v. Elms* (1935) 4 Cal.2d 681, 684.)

8. On page 8, in the first partial paragraph, delete the following sentence:

> The moving party seeking intervention always bears the burden of proving entitlement to party status. (*People v. Brophy* (1942) 49 Cal.App.2d 15, 34.)

Insert in place of the deleted sentence indicated above, continuing within the same paragraph, the following substitute language:

> While " '[c]ourts have recognized . . . section 387 should be liberally construed in favor of intervention' " (*City of Malibu v. California Coastal Com.* (2005) 128 Cal.App.4th 897, 902), the moving party seeking intervention always bears the burden of proving entitlement to party status. (*People v. Brophy* (1942) 49 Cal.App.2d 15, 34.)

9. On page 8, in the first partial paragraph, delete the following sentences:

> California courts consider federal precedent under Federal Rules of Civil Procedure, rule 24 when analyzing section 387 motions. (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732 (*Edwards*).) And we " 'liberally construe[]' " section 387 in favor of non-party movants (*City of Malibu v. California Coastal Com.* (2005) 128 Cal.App.4th 897, 902), " ' "guided primarily by practical and equitable considerations." ' " (*Callahan v. Brookdale Senior Living Communities, Inc.* (9th Cir. 2022) 42 F.4th 1013, 1020 (*Callahan*).)

3

10. On page 9, at the end of the first partial paragraph, after the parenthetical citation to "(*United States v. Alisal Water Corp.* (9th Cir. 2004) 370 F.3d 915, 919.)", add the following new sentence and citation:

    After the 1977 amendment, California courts began to "take guidance from federal law," "[s]ince '[s]ubdivision (b) of . . . section 387 is in substance an exact counterpart to rule 24(a) of the Federal Rules of Civil Procedure.' " (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732 (*Edwards*).)

11. On page 9, in the last paragraph, delete the following sentence:
    In some circumstances, the outcome of this three-factor test for adequacy of representation is determined by a presumption.

    Insert in place of the deleted sentence indicated above, continuing within the same paragraph, the following substitute language:

    In some circumstances, the outcome of this three-factor test for adequacy of representation may be subject to a rebuttable presumption.

12. On page 13, in the first partial paragraph, in the parenthetical at the end of the paragraph, replace "See *Callahan*, *supra*, 42 F.4th at p. 1019" with "See *Callahan v. Brookdale Senior Living Communities, Inc.* (9th Cir. 2022) 42 F.4th 1013, 1019" so the parenthetical reads:
    (See *Callahan v. Brookdale Senior Living Communities, Inc.* (9th Cir. 2022) 42 F.4th 1013, 1019 (*Callahan*) ["We review de novo a district court's denial of a motion to intervene as a matter of right, with the exception of a denial based on timeliness, which is reviewed for abuse of discretion."].)

13. On page 21, in the first partial paragraph, delete the following sentence:
    Although we believe Piplack and Taylor as deputized LWDA proxies have significantly protectable interests, in the end we conclude that they failed to bear their burden of proving inadequate representation or potential impairment of their protectable interests.

    Insert in place of the deleted sentence indicated above, continuing within the same paragraph, the following substitute language:

4

Although we believe Piplack and Taylor as deputized LWDA proxies have significantly protectable interests, in the end we conclude that they failed to bear their burden of proving both potential impairment of their protectable interests and inadequate representation.

14. On page 21, in the first full paragraph, delete the following sentence:
Had the court moved past *Turrieta*, and found an interest sufficient to satisfy the threshold requirement for intervention, as we conclude it should have, the permissive intervention standard does not require a showing of inadequate representation, which is the stumbling block Piplack and Taylor fail to overcome for mandatory intervention.

Insert in place of the deleted sentence indicated above, continuing within the same paragraph, the following substitute language:

Had the court moved past *Turrieta*, and found an interest sufficient to satisfy the threshold requirement for intervention, as we conclude it should have, the permissive intervention standard does not require a showing of either impairment of the putative intervenor's claimed interest or inadequate representation, which are the stumbling blocks Piplack and Taylor fail to overcome for mandatory intervention.

15. On page 21, also in the first full paragraph, in the fourth sentence (which begins with "The governing permissive intervention statute"), replace the words "that issue" with "those issues" so the sentence reads:
The governing permissive intervention statute, section 387, subdivision (d)(2), does not mention those issues.

16. On page 22, in the third full paragraph, delete the first sentence of the paragraph, which currently reads:
Since Piplack and Taylor possess a legal interest sufficient to trigger eligibility for intervention as-of-right, their entitlement to mandatory intervention turns on the issues of adequacy of representation and whether they are "so situated that the disposition of the action may impair or impede" their protectable interests.

Insert in place of the deleted sentence indicated above, as the new first sentence of the paragraph, the following substitute language:

Since Piplack and Taylor possess a legal interest sufficient to trigger eligibility for intervention as-of-right, their entitlement to mandatory intervention turns on whether they are "so situated that the disposition of the action may impair or impede" their protectable interests and the closely related issue of adequacy of representation "by one or more of the existing parties."

17. On page 27, in the first full paragraph, in the second sentence, in the second parenthetical within the sentence, delete the phrase "before deferring, procedurally, to Piplack" so the sentence reads:

Without viable penalty claims covering expense reimbursement (which Piplack is pursuing) or claims for uniform donning and doffing time (which Taylor sought to pursue in her original complaint), they insist that Accurso—as the self-appointed private attorney general for all PAGA claims against In-N-Out—has very little negotiating leverage against In-N-Out and cannot maximize the settlement value of his penalty claims because he failed to obtain LWDA authorization to cover uniform-related claims against In-N-Out.

18. On page 28, in the first paragraph, in the second sentence, replace the phrase ", in the end," with the word "ultimately" so the sentence reads:

They also point out that ultimately there was no settlement here; that Piplack and Taylor have no valid basis to speculate about what might have been in an unconsummated settlement; and thus that the entire basis of the intervention motion from Piplack and Taylor—their asserted need to participate in the settlement approval process to guard against overbreadth—has evaporated.

19. On page 32, in the first full paragraph, delete the following sentence:

In the absence of an actual settlement demonstrating that Accurso exceeded the scope of his LWDA authorization, the mere potential that Piplack's and Taylor's interests "may be" unable or unwilling to represent their interests in a future, hypothetical settlement is speculative.

Insert in place of the deleted sentence indicated above, continuing within the same paragraph, the following substitute language:

6

In the absence of an actual settlement demonstrating that Accurso exceeded the scope of his LWDA authorization, the mere potential that he "may be" unable or unwilling to represent Piplack's and Taylor's interests in a future, hypothetical settlement is speculative.

The modifications effect no change in the judgment.


Dated:  September 25, 2023                                     BROWN, P. J.

Trial Court:        Superior Court of California, County of Sonoma

Trial Judge:        Hon. Jennifer V. Dollard

Counsel:            Aiman-Smith & Marcy, Randall B. Aiman-Smith,
                       Reed W.L. Marcy, Hallie von Rock, Brent A. Robinson;
                       Lavi & Ebrahimian, Joseph Lavi, Jordan D. Bello,
                       Vincent G. Granberry; Law Offices of Sahag Majarian II
                       and Sahag Majarian II for Movants and Appellants.

                    Polk Kabat, Mark G. Humenik for Tracy Chen in her
                       Representative Proxy and Private Attorney General
                       Capacity on Behalf of the State of California as Amicus
                       Curiae on behalf of Movants and Appellants.

                    Lebe Law, Jonathan M. Lebe, Zachary T. Gershman,
                       Brielle D. Edborg for Plaintiff and Respondent.

                    Sheppard, Mullin, Richter & Hampton, Paul S. Cowie,
                       John D. Ellis, Sami Hasan, Amanda E. Beckwith for
                       Defendant and Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| RYAN ACCURSO,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>IN-N-OUT BURGERS,<br>        Defendant and Respondent;<br><br><br>CALIFORNIA LABOR AND<br>WORKFORCE DEVELOPMENT<br>AGENCY ex rel. TOM PIPLACK et<br>al.,<br>        Movants and Appellants. | A165320<br><br>(Sonoma County Super. Ct.<br>No. SCV-268956) |

## I. INTRODUCTION

Appellants Tom Piplack and Brianna Marie Taylor are lead plaintiffs in Private Attorneys General Act (PAGA) (Lab. Code, § 2698 et seq.) representative actions in Orange and Los Angeles Counties against respondent In-N-Out Burgers (In-N-Out).  Upon learning of settlement negotiations in a subsequent, overlapping PAGA action brought by respondent Ryan Accurso against In-N-Out in Sonoma County, Piplack and Taylor filed a proposed complaint in intervention in the Sonoma County action, and moved to intervene under Code of Civil Procedure section 387 and

1

for a stay.[1]  The trial court denied the motions, relying principally on *Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, review granted Jan. 5, 2022, S271721 (*Turrieta*) and distinguishing our decision in *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56 (*Moniz*).  Before us now is an appeal from Piplack and Taylor arguing that the denial of these two motions was erroneous.  Accurso and In-N-Out have responded urging affirmance in separate briefs.  We will vacate the denial order and remand for reconsideration.

## II. BACKGROUND

Between February 2019 and December 2021, plaintiffs in four counties filed six separate PAGA actions against In-N-Out.  All of the plaintiffs in these actions alleged violations of the Labor Code and sought civil penalties on behalf of the State of California.  By August 2021, when Accurso's case in Sonoma County was filed, two PAGA cases against In-N-Out were pending in Los Angeles County; one case was pending in San Bernadino County; and one case was pending in Orange County.

Piplack's case (which was originally filed in San Francisco County and then transferred to Orange County) was the first of the six PAGA actions to be filed against In-N-Out.  Following the filing of Piplack's case, additional PAGA lawsuits were filed in Los Angeles (*Taylor*, *Becerra*) and San Bernadino County (*Carrera*).  *Accurso* was the fifth of the six to be filed, followed by *Andrews* in Los Angeles County.

The operative complaint in *Piplack* alleges a single PAGA claim arising from In-N-Out's policy of requiring its restaurant employees to report to work

---

[1] All further undesignated statutory citations are to the Code of Civil Procedure.

2

each shift wearing white pants and failing to reimburse employees for both the cost of purchasing those pants and the cost of cleaning them after each shift. Legally, plaintiff Piplack's uniform expense theory is based primarily on alleged violation of Labor Code section 2802, a statute requiring reimbursement of employees' business expenses while discharging their duties.

Without detailing the exact contours of each of the six cases, suffice it to say that, as originally filed, some of the actions made particularized factual allegations of wage-and-hour violations relating to policies requiring employees to wear uniforms (e.g., *Piplack* in Orange County, *Taylor* in Los Angeles County[2]) while others made more generalized allegations of violations that might arguably encompass uniform-wearing policies but do not specifically mention that topic (e.g., *Accurso* in Sonoma County).[3]

All parties to this appeal concede overlap among the cases, presumably because each case pleads one or more PAGA claims arising from Labor Code violations suffered by current or former In-N-Out employees under common legal theories. The cases all allege, for example, failure to pay minimum

---

[2] The original complaint in *Taylor* alleged various PAGA claims, including a claim arising from In-N-Out's policy of requiring employees to don and doff their uniforms while off the clock and during breaks, and to iron their uniforms while off the clock prior to reporting for work. The court in *Taylor* initially stayed that action pending completion of proceedings in *Piplack*, but plaintiff Taylor, represented by the same counsel as plaintiff Piplack, later amended her complaint to withdraw those allegations, which led to the court lifting the stay.

[3] Other than conclusory statements that largely paraphrase each of the wage-and-hour statutes and regulations that In-and-Out allegedly violated, the operative complaint in *Accurso* is devoid of factual content.

3

wages (Lab. Code, §§ 1194, 1197.1), failure to pay overtime (*id.*, §§ 510, 1194, 1198), failure to pay all wages on time (*id.*, §§ 204, 210), failure to provide accurate wage statements (*id.*, §§ 226, subd. (a), 226.3), and failure to pay all wages when due upon separation of employment (*id.*, §§ 201–203).[4]

When plaintiff's counsel in *Piplack* and *Taylor* learned of mediation activity in *Accurso*, they, along with counsel for PAGA claimants in *Andrews*, *Becerra*, and *Carrera*—attempted to negotiate a collaborative arrangement with plaintiff Accurso's counsel to settle all pending PAGA claims with In-N-Out on a global basis. But the negotiations foundered when no agreement could be reached on the proportionate sharing of attorney's fees recovery.

Plaintiff Accurso then proceeded to mediate his case with In-N-Out individually, without the participation of plaintiffs Piplack, Taylor, or any of the other PAGA claimants against In-N-Out. In light of what appeared to be an imminent settlement, plaintiffs Piplack and Taylor moved to intervene in *Accurso*. They also requested a stay of proceedings in *Accurso* based on the doctrine of exclusive concurrent jurisdiction (see *Shaw v. Superior Court* (2022) 78 Cal.App.5th 245 (*Shaw*)), arguing that *Accurso* should be stayed as a later-filed action.

According to post-briefing evidence submitted by counsel for Piplack and Taylor (their final email exchange with Accurso's counsel in the unsuccessful discussions of a joint approach to global settlement), the mediation produced a settlement that would "resolve all the PAGA claims against [In-N-Out] for $2.05 million," with a release that would "wipe out" all

---

[4] While In-N-Out now concedes overlap among the cases, its case management statements in Piplack's Orange County case failed to mention any of the other cases.

PAGA claims against In-N-Out. At the hearing on the motion to intervene, Accurso's counsel implicitly conceded an agreed case resolution, telling the court, "we think we have obtained a very, very favorable settlement." Counsel for In-N-Out agreed, stating, "I would just echo what plaintiff's counsel said."

The trial court declined to consider any post-briefing evidence of the alleged settlement, concluded that Piplack and Taylor lacked standing to intervene, and on that basis denied both motions. It explained, "[T]he Court finds that neither [Piplack nor Taylor] has a personal interest in the PAGA claims being prosecuted by Accurso, but rather the interest lies with the State, as the real party in interest, and thus [Piplack and Taylor] do not have standing to intervene." "[L]ikewise," the court ruled, they "do not have standing to request a stay."

In so ruling, the trial court followed *Turrieta*. It noted that our Supreme Court has granted review in *Turrieta*, but found the Court of Appeal's reasoning in *Turrieta* to be persuasive. While acknowledging decisions in tension with *Turrieta*—including ours in *Moniz*—the court concluded that none of these cases addresses the issue presented here: "[D]o non-party Plaintiffs with overlapping PAGA claims have standing to intervene?"

Piplack and Taylor appealed the order denying their motion to intervene.[5] They also filed a petition for a writ of prohibition challenging the

---

[5] Because the denial of a motion to intervene is an appealable order, we have jurisdiction over this interlocutory order. (*Dobbas v. Vitas* (2011) 191 Cal.App.4th 1442, 1448 ["The trial court's order denying leave to intervene is directly appealable because it finally and adversely determines the moving party's right to proceed in the action."].)

5

denial of their request to stay the proceedings in *Accurso*. We granted a stay of supersedeas pending our resolution of the appeal and dismissed the writ petition as moot. We now conclude the court was correct to deny Piplack and Taylor's section 387 motion to the extent it sought intervention as-of-right, but we vacate the order to the extent Piplack and Taylor sought permissive intervention and remand for further consideration of that issue as well as the issue of a possible stay in some form.[6]

## III. DISCUSSION

### A. *Legal Principles: Intervention*

#### 1. Intervention Statute

For more than a century following the enactment of section 387 in 1872, intervention was permitted on a purely discretionary basis. With some minor wording variations as it evolved, the statute stated, "At any time before trial, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, *may* intervene in the action or proceeding." (Former § 387[7], italics added.) That changed in

---

[6] Piplack and Taylor filed two requests asking that we take judicial notice of certain documents that were not in the record before the trial court, and Accurso filed one such request. We deferred ruling on these requests until we rule on the merits. With the exception of Piplack and Taylor's request that we take judicial notice of exhibits 1 and 5 of their first request (case management statements filed by In-and-Out in plaintiff Piplack's Orange County action), which we grant in part under Evidence Code section 452, subdivision (d), as to those exhibits, we now deny these requests.

[7] Statutes and Amendments to the Codes 1873–1874, chapter 383, section 44, page 296; Statutes 1907, chapter 371, section 1, page 703; Statutes 1969, chapter 1611, section 5, page 3379, operative July 1, 1970; Statutes 1970, chapter 484, section 1, page 961.

1977, when the Legislature amended section 387[8] to conform the statute to the structure of Federal Rules of Civil Procedure, rule 24 (28 U.S.C.), which provides for intervention as-of-right in some instances under rule 24(a) (mandatory intervention), and intervention in the discretion of the court in other instances under rule 24(b) (permissive intervention).

Section 387, subdivision (d) now provides: "(1) The court shall, upon timely application, permit a nonparty to intervene in the action or proceeding [where] . . . [¶] . . . [¶] (B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties.[9] [¶] (2) The court may, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both."

This statute has an extensive case law gloss. It is designed to "protect[] the interests of others affected by the judgment, obviating delay

---

[8] Statutes 1977, chapter 450, section 1, page 1486.

[9] Section 387, subdivision (d)(1)(A) provides for mandatory intervention in an alternative scenario where "[a] provision of law confers an unconditional right to intervene," wholly apart from the nature and character of the non-parties interest in the litigation or the issue of adequacy of representation. This provision is a counterpart to Federal Rules of Civil Procedure, rule 24(a)(1). Since it is not cited or mentioned by Piplack and Taylor, we confine our attention to section 387, subdivision (d)(1)(B) and (d)(2), the counterparts to Federal Rules of Civil Procedure, rule 24(a)(2) and (b).

7

and multiplicity." (*People v. Superior Court (Good)* (1976) 17 Cal.3d 732, 736; see *Belt Casualty Co. v. Furman* (1933) 218 Cal. 359, 362.) The moving party seeking intervention always bears the burden of proving entitlement to party status. (*People v. Brophy* (1942) 49 Cal.App.2d 15, 34.) California courts consider federal precedent under Federal Rules of Civil Procedure, rule 24 when analyzing section 387 motions. (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732 (*Edwards*).) And we " 'liberally construe[]' " section 387 in favor of non-party movants (*City of Malibu v. California Coastal Com.* (2005) 128 Cal.App.4th 897, 902), " ' "guided primarily by practical and equitable considerations." ' " (*Callahan v. Brookdale Senior Living Communities, Inc.* (9th Cir. 2022) 42 F.4th 1013, 1020 (*Callahan*).)

The threshold requirement that the non-party possess an "interest" in the litigation—textually defined under section 387, subdivision (d)(1)(B) as "an interest relating to the property or transaction that is the subject of the action" and under subdivision (d)(2) as an "interest in the matter in litigation"—requires the non-party's interest to "be direct rather than consequential." (*People v. Superior Court (Good)*, *supra*, 17 Cal.3d at p. 736.) Consistent with the approach courts take to construction of the statute generally, the standard is a practical one, requiring that we look to whether " 'the intervener will either gain or lose by the direct legal operation and effect of the judgment.' " (*Jersey Maid Milk Products Co. v. Brock* (1939) 13 Cal.2d 661, 663; see *Elliott v. Superior Court* (1914) 168 Cal. 727, 734.)

These foundational principles, all enunciated prior to 1977, continue to govern construction of the statute today. What is different now is that, under the bifurcated scheme taken from Federal Rules of Civil Procedure, rule 24, nonparties *must* be permitted to intervene under section 387, subdivision

(d)(1)(B) if they:  (1) file a timely application, (2) have "an interest relating to the property or transaction that is the subject of the action," (3) are "so situated that the disposition of the action may impair or impede [their] ability to protect that interest," and (4) show that their interest is not "adequately represented by one or more of the existing parties."  (*United States v. Alisal Water Corp.* (9th Cir. 2004) 370 F.3d 915, 919.)

The burden to qualify for intervention as-of-right is "minimal" and evidence showing that existing representation "may be" inadequate suffices.  (*Trbovich v. United Mine Workers* (1972) 404 U.S. 528, 538, fn. 10; *Barnes v. Security Life of Denver Ins. Co.* (10th Cir. 2019) 945 F.3d 1112, 1124–1125.)  "[T]hree factors . . . determin[e] the adequacy of representation:  (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.  [¶] The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties."  (*Arakaki v. Cayetano* (9th Cir. 2003) 324 F.3d 1078, 1086.)  "[T]he requirements for intervention are broadly interpreted in favor of intervention."  (*United States v. Alisal Water Corp.*, *supra*, 370 F.3d at p. 919.)

In some circumstances, the outcome of this three-factor test for adequacy of representation is determined by a presumption.  "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises."  (*Arakaki v. Cayetano*, *supra*, 324 F.3d at p. 1086.)  "If the applicant's interest is identical to that of one of the present parties, a compelling showing [is] . . . required to

9

demonstrate inadequate representation." (*Ibid.*) But where " 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." (*Berger v. North Carolina State Conference of the NAACP* (2022) 597 U.S.__ [142 S.Ct. 2191, 2204] (*Berger*); see *Trbovich, supra*, 404 U.S. at p. 538.)

Permissive intervention, which works quite differently than intervention as-of-right, essentially carries forward the discretionary regime on which section 387 was originally founded. "A trial court *may* . . . 'permit a nonparty to intervene in [an] action . . . if the [nonparty] has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both.' " (§ 387, subd. (d)(2), italics added.) Intervention will generally be permitted if: " '(1) the proper procedures have been followed[,] (2) the nonparty has a direct and immediate interest in the action[,] (3) the intervention will not enlarge the issues in the litigation[,] and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action.' " (*City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1036.)

While a comparison of interests analysis focused on the non-party intervenor is required for mandatory intervention under section 387, subdivision (d)(1)(B), courts undertake a balancing of party and non-party interests under section 387, subdivision (d)(2). Here, too, we take federal precedent under Federal Rules of Civil Procedure, rule 24 into account. Permissive intervention requires "balanc[ing] the interests of [nonparties] affected by a judgment against the interests of the original parties in pursuing their case unburdened by others." (*South Coast Air Quality Management District v. City of Los Angeles* (2021) 71 Cal.App.5th 314, 320, review den. Feb. 16, 2022.) A trial court has broad discretion to strike this

10

balance.  (*City and County of San Francisco v. State of California*, *supra*, 128 Cal.App.4th at p. 1037.)  And we may find that the trial court abused its discretion only if its decision exceeds the bounds of reason.

Although some courts refer to discretionary balancing of the interests of the non-party movant and the existing parties as the objective of section 387 generally, the text of subdivisions (d)(1)(B) (mandatory intervention) and (d)(2) (permissive intervention) indicates that the analysis under these two provisions has a sharply different focus.  The commentary on Federal Rules of Civil Procedure, rule 24(a)(2) and (b) in a leading federal treatise, as transposed onto section 387, is apt.  The sole focus of the mandatory intervention analysis is on whether "denial of intervention [will] have a significant enough effect on the movant[.]  Considerations regarding prejudice to original parties are not incorporated in the [subdivision (d)(1)(B)] criteria.  The chief focus of [subdivision (d)(1)(B)] is on the movant." (6 *Moore's Federal Practice – Civil* (2023) § 24.03 [1][c].)  In contrast, subdivision (d)(2) permissive intervention examines what the movant proposes to add to the litigation, while taking into account "other factors, such as harm to the existing parties and delays."  (6 *Moore's Federal Practice – Civil*, *supra*, § 24.03 [1][c].)

### 2. Standard of Review

The parties dispute the standard of review applicable to an order denying intervention.  Piplack and Taylor urge us to undertake de novo review, while Accurso and In-N-Out advocate abuse of discretion review. Courts have not settled on which of these standards is correct (*Edwards*, *supra*, 29 Cal.App.5th at p. 732) or indeed whether it may be said that there *is* a generally applicable standard.  We think this lack of clarity in the case

11

law elucidating the applicable standard of review stems from a lag in the case law in catching up to the significance of the 1977 amendment of the statute.

For many years, the uniformly accepted standard was abuse of discretion.  (E.g., *People v. Superior Court (Good)*, *supra*, 17 Cal.3d at p. 737); see *Isaacs v. Jones* (1898) 121 Cal. 257, 261 ["[w]hether any particular case is within the terms of the premises is best determined by a consideration of the facts of that case"].)  But once the statute was amended in 1977 to track the bifurcated federal scheme of mandatory and permissive intervention, the terminology of de novo review began to appear in some mandatory intervention cases (e.g., *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 547, fn. 2), typically where the nature and character of the proposed intervener's interest in joining the litigation was a question of statutory interpretation (e.g., *Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1504), as it is here.

In this case, we will review the denial of mandatory intervention de novo, not just because an issue of statutory interpretation is at stake, but also because de novo review best accords with the Legislative intent in 1977 to correct what the Legislature perceived as a reluctance by courts to exercise their discretion in a manner that gives unrepresented or underrepresented parties access to court to protect their interests.[10]  "[C]oncerns of judicial

---

[10] The 1977 revision was "designed to protect the rights of interested third parties to intervene in court cases which may significantly affect their civil rights."  (Sen. Com. on Judiciary, Background Information for Sen. Bill No. 750 (1977–1978 Reg. Sess.) as introduced Mar. 31, 1977, p. 2 (Senate Bill 750 Background Information).)  Citing failed efforts by interested parties to intervene in *DeRonde v. Regents of University of California* (1981) 28 Cal.3d 875, cert. denied (1981) 454 U.S. 832, and *Bakke v. Regents of University of California* (1976) 18 Cal.3d 34, affirmed in part and reversed in part (1978)

administration—' "efficiency, accuracy, and precedential weight" ' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384)—favor a standard that allows appellate courts to ensure all parties who have a right to participate in judicial proceedings have the opportunity to do so where the Legislature has expressed a categorical preference on the issue. Thus we have what may be fairly described as a "mixed question of law and fact." (*Ibid*.) This is consistent with the federal approach to the standard of review under Federal Rules of Civil Procedure, rule 24. (See *Callahan*, *supra*, 42 F.4th at p. 1019 ["We review de novo a district court's denial of a motion to intervene as a matter of right, with the exception of a denial based on timeliness, which is reviewed for abuse of discretion."].)

We will review the denial of permissive intervention, on the other hand, for abuse of discretion as traditionally understood. Without exception, courts today continue to apply the traditional, more deferential abuse of discretion standard for permissive intervention. (E.g., *South Coast Air Quality Management District v. City of Los Angeles*, *supra*, 71 Cal.App.5th 314, 320; *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1428.) That is as it should be, we think, because in striking the requisite balancing of party and non-party interests, the range of criteria courts may reasonably consider is inherently case-specific. (See *City and*

---

438 U.S. 265 and abandoned in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* (2023) 600 U.S. ___ [143 S.Ct 2141], the bill sponsor stated, " 'My bill will . . . give [marginalized groups] an opportunity to speak in their own behalf on any litigation which affects them.' " (Senate Bill 750 Background Information, *supra*, at p. 3; see Senate Bill 750, Assem. 3d reading analysis as amended June 1, 1977, p. 1 ["the purpose of this bill is to permit the adequate protection of the vital interests of third parties in public interest litigation" such as *DeRonde* and *Bakke*].)

*County of San Francisco v. State of California*, *supra*, 128 Cal.App.4th at pp. 1036–1037.)  Even where the abuse of discretion standard applies, however, we must bear in mind the caveat that a court necessarily abuses its discretion where it relies on a mistaken legal premise.  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)  And of course, the range of discretion is not limitless, as there are circumstances in which, on the facts presented, discretion may reasonably be exercised in only one way.  (*Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 579.)

## B. *Legal Principles:  PAGA*

Before turning to the trial court's intervention rulings on the merits, we sketch out some PAGA background principles that provide the foundation for our intervention analysis.  A PAGA action is designed to protect the public, not to benefit private parties.  (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.)  PAGA "does not create property rights, or any other substantive rights" for aggrieved employees.  (*Ibid*.)  It is a procedural statute authorizing private citizens to seek civil penalties that State agencies otherwise would recover.  (*LaFace v. Ralphs Grocery Co.* (2022) 75 Cal.App.5th 388, 397.)  The PAGA statutory scheme permits the deputization of multiple private parties to pursue "separate but similar actions by different employees against the same employer."  (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 866.)

But this deputization occurs only after (1) the deputized proxy satisfies PAGA's notice requirements, and (2) the Labor Workforce and Development Agency (LWDA) indicates "it does not intend to investigate the alleged violation" or does not timely respond.  (*LaFace v. Ralphs Grocery Co.*, *supra*, 75 Cal.App.5th at p. 394; see Lab. Code § 2699.3, subd. (a)(2)(A).)  Notice to the LWDA in this scheme is required as a matter of administrative

14

exhaustion before litigation may proceed. " 'Before bringing a civil action for statutory penalties, an employee must comply with Labor Code section 2699.3.' [Citation.] That section 'requires the employee to give written notice of the alleged Labor Code violation to both the employer and the [LWDA], and the notice must describe facts and theories supporting the violation.' [Citation]. 'Proper notice under section 2699.3 is a "condition" of a PAGA lawsuit.' " (*Uribe v. Crown Building Maintenance Co.* (2021) 70 Cal.App.5th 986, 1003 (*Uribe*).)

The delegation of enforcement power from the LWDA to the aggrieved employee is not open-ended. It gives the proxy control of the penalty claims identified in his written notice to the LWDA, but is limited in scope to the specific facts and theories stated in the notice. (*Uribe*, *supra*, 70 Cal.App.5th at p. 1003; *Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824.) Because a proxy's PAGA authority derives from and is bounded by the LWDA notice on which it is founded (*Khan v. Dunn-Edwards Corp.* (2018) 19 Cal.App.5th 804, 808–810; *Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 59), the enforcement power a PAGA claimant receives upon perfecting a PAGA claim is not a roving warrant to collect penalties for any violation of the Labor Code that may be discovered in subsequent litigation, or that may be raised in settlement negotiations by rogue PAGA claimants purporting to deal with matters beyond their authority.

## C. Turrieta v. Lyft *and the Threshold Interest-in-the-Litigation Requirement*

Against this legal backdrop, the trial court decided that Piplack and Taylor have no "personal" interest in the PAGA claims between plaintiff Accurso and In-N-Out, and thus that they cannot satisfy the threshold standing requirement for mandatory or permissive intervention, even though

15

they are PAGA claimants in separate actions that overlap with *Accurso*. As noted above, in support of this ruling, the court relied on *Turrieta*, finding that case more closely on point than our decision in *Moniz*. We disagree.

In *Turrieta*, the appellants, Olson and Seifu, and plaintiff Turrieta filed separate PAGA actions alleging overlapping claims relating to Lyft's alleged misclassification of its drivers as independent contractors. When Turrieta reached a settlement in her action, the appellants unsuccessfully moved to intervene and to vacate the judgment approving Turrieta's settlement. (*Turrieta, supra*, 69 Cal.App.5th at pp. 964–965, 967, rev.gr.) On appeal, Turrieta and Lyft successfully moved to dismiss for lack of appellate standing under section 902 (*Turrieta,* at p. 967), and thus the issue of Olson and Seifu's standing to pursue the appeal was the primary focus of the appellate court's opinion (*id.* at pp. 967–968).

The court reasoned that Olson and Seifu were not "aggrieved parties" pursuant to section 902. A party is aggrieved " 'only if its "rights or interests are injuriously affected by the judgment." ' " (*Turrieta, supra*, 69 Cal.App.5th at p. 971, rev.gr.) The court rejected the appellants' contention that they were aggrieved in their capacity as designated proxies for the state. (*Ibid.*) The court reasoned that in a PAGA action, the state is the real party in interest, and PAGA representatives who file a claim on behalf of the state do "not convert the state's interests into their own or render them real parties in interest." (*Turrieta*, at p. 972.) Thus, because "it is the state's rights, and not appellants', that are affected by a parallel PAGA settlement, appellants are not aggrieved parties with standing to seek to vacate the judgment or appeal." (*Turrieta*, at p. 972.)

Having determined that the *Turrieta* appellants had no standing to appeal, the court then proceeded to decide the issue presented for merits

16

review, addressing whether, under section 387, the trial court correctly denied the appellants' motion to intervene in the trial. On that issue, the appellate court effectively collapsed its ruling on appellate standing into its ruling on intervention in the trial court. For the same reason the panel found no standing to appeal—the appellants had no "personal" rights at stake in a PAGA action filed by another PAGA claimant—it concluded the appellants did not have a right to intervene because they could not show they had a "direct and immediate interest in the settlement." (*Turrieta, supra,* 69 Cal.App.5th at p. 977, rev.gr.)

This analysis conflates a series of distinct legal issues under the rubric of standing. Whether an appellant has standing as "a party aggrieved" under section 902 (which is where we parted ways with *Turrieta* in *Moniz*) is not the same as whether a non-party must or may be allowed to intervene under section 387. These issues are separate. Though they are related and in outcome may often be resolved the same way, they should not be equated. When dealing with section 387 intervention issues, we believe the use of standing terminology obscures the correct analysis in PAGA cases. The resulting lack of clarity, in our view, is evident in *Turrieta,* where the court found it dispositive that Olson and Seifu had no "personal" interest in plaintiff Turrieta's case for purposes of both section 902 and section 387 analysis. But nothing in the pertinent statutory language requires that an "interest" (section 387) or an "aggrievement" (section 902) be "personal." Nor does the relevant case law under either statute impose any such requirement.[11]

---

[11] It is particularly important to avoid imprecise use of the term "standing" in this context, since federal courts sitting in diversity or

17

As we observed in *Moniz*, the *Turrieta* court appeared to "discount" the role of deputized PAGA claimants as "designated proxies of the state." (*Moniz*, *supra*, 72 Cal.App.5th at p. 73.) Where our esteemed colleagues in *Turrieta* went off track, we think, was their implicit premise that a putative intervenor must have a pecuniary or property interest in potential recovery to warrant intervention. That sort of test will often be met in purely private litigation where the spoils are measured in money damages or where property ownership is at stake, but where litigants have a legitimate claim to representation of the public interest, "the intervener need neither claim a pecuniary interest nor a specific legal or equitable interest in the subject matter of the litigation." (See *Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1200 [Save-The-Redwoods League members' claimed right to use public lands]; *County of San Bernadino v. Harsh*

---

exercising their supplemental jurisdiction often address standing in federal PAGA cases—a valuable source of PAGA precedent, albeit one that has persuasive value only— through the constitutional lens of "case or controversy" standing under article III of the United States Constitution. (E.g., *Magadia v. Wal-Mart Associates, Inc.* (9th Cir. 2021) 999 F.3d 668, 677–680.) The concept that a plaintiff must have a "personal" stake in his or her case is at the root of federal standing law under article III (*TransUnion LLC v. Ramirez* ( 2021) 594 U.S.___ [141 S.Ct. 2190, 2203] ["For there to be a case or controversy under Article III, the plaintiff must have a ' "personal stake" ' in the case—in other words, standing"], but plays no such foundational role in the California courts. As a matter of California procedure, standing under PAGA is statutory in nature. Notably, PAGA is not the only setting in California law where plaintiffs with no individualized, personal stake in the relief sought have standing to sue. (See e.g., *Blair v. Pitchess* (1971) 5 Cal.3d 258, 267 [taxpayer standing under Code of Civil Procedure section 526a]; *Silver v. City of Los Angeles* (1961) 57 Cal.2d 39, 40– 41 [common law taxpayer standing].)

18

*California Corp.* (1959) 52 Cal.2d 341, 346 [right of the United States to protect its fiscal policy].)  A major objective of the 1977 amendment of section 387, as we read the Legislative history, was to facilitate intervention by third parties claiming stakes imbued with the public interest as a basis for participation in the litigation of others.

To accommodate a broad understanding of the range of cognizable interests that may justify intervention under section 387, the case law under Federal Rules of Civil Procedure supplies some helpful terminology.  Federal courts speak of a "significantly protectable interest."[12]  That phrase is capacious enough to encompass the narrow, pocket-book objectives of most private litigants, the broader objectives of public interest advocates,[13] and the parens patrie objectives of those who seek to fulfill duties conferred upon

---

[12] *Donaldson v. United States* (1971) 400 U.S. 517, 531, superseded by statute as stated in *United States v. Peoples Benefit Life Ins. Co.* (2d Cir. 2001) 271 F.3d 411, 415.  Another, substantially equivalent formulation frequently used in Federal Rules of Civil Procedure, rule 24 case law is "direct, non-contingent, substantial and legally protectible interest."  (See e.g., *Southern California Edison Co. v. Lynch* (9th Cir. 2002) 307 F.3d 794, 803; *Washington Elec. Co-op., Inc. v. Massachusetts Municipal Wholesale Electric Co.* (2d Cir. 1990) 922 F.2d 92, 97.)

[13] See *La Union del Pueblo Entero v. Abbott* (5th Cir. 2022) 29 F.4th 299, 305–306 ("[A] 'legally protectable interest' does not mean the interest must be 'legally *enforceable*': '[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim.' [Citation.]  In fact, we have said that in a case involving 'a public interest question' that is 'brought by a public interest group,' the 'interest requirement may be judged by a more lenient standard.' ").

19

them by law.[14]  California courts recognize that a wide range of interests qualify under section 387,[15] but to date have not adopted a consistently used phraseology.  We join other courts that have adopted the phrasing used in Federal Rules of Civil Procedure, rule 24 cases (*Carlsbad Police Officers Assn. v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 148; *Edwards, supra,* 29 Cal.App.5th at p. 732) and hold that non-party PAGA claimants who seek to intervene in overlapping PAGA cases must have a "significantly protectable interest" that meets the threshold requirements of section 387.  A personal interest is not required.

## D. *Intervention Analysis*

Turning to our intervention analysis under section 387, we summarize our conclusions, in two steps, as follows.

*First*, applying de novo review, we agree with the trial court's decision to deny mandatory intervention, though not for the reason the trial court gave.  (See *Ross v. Superior Court* (2022) 77 Cal.App.5th 667, 681 [" 'It is well

---

[14] *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.* (1967) 386 U.S. 129, 133 (state whose citizens were impacted by interstate gas prices, public utility purchaser of interstate gas, and regional distributor of interstate pipeline's gas have right to intervene in settlement approval proceedings in antitrust case on behalf of gas users in their regions where consent decree requiring break up of interstate pipeline monopoly potentially affected gas prices in those regions).

[15] *Perry v. Brown* (2011) 52 Cal.4th 1116, 1126 (because of "the unique role of initiative proponents in the constitutional initiative process as recognized by numerous provisions of the Elections Code, it would clearly constitute an abuse of discretion for a court to deny the official proponents of an initiative the opportunity to participate as formal parties in the proceeding, either as interveners or as real parties in interest").

20

settled that an appellate court reviews the ruling of the trial court, not its rationale' "].)  Here, the court was right to reject most of the arguments Piplack and Taylor made in an effort to justify their claim to intervention as-of-right, but not because they lack a "personal interest" in joining Accurso's case.  Having been deputized to pursue PAGA claims on behalf of the State of California that may be foreclosed by a settlement or adjudication of this case, they have significantly protectable interests for purposes of section 387.  Although we believe Piplack and Taylor as deputized LWDA proxies have significantly protectable interests, in the end we conclude that they failed to bear their burden of proving inadequate representation or potential impairment of their protectable interests.  The prospect that Accurso might someday enter into a settlement purporting to resolve PAGA claims he is not authorized to resolve fails to satisfy that burden in either respect.

*Second*, the denial of permissive intervention was an abuse of discretion.  In relying on *Turrieta's* holding that a non-party PAGA claimant seeking to intervene in another PAGA case has no interest warranting intervention, the court based its exercise of discretion on an erroneous legal premise, and as a result effectively failed to exercise discretion at all.  Had the court moved past *Turrieta*, and found an interest sufficient to satisfy the threshold requirement for intervention, as we conclude it should have, the permissive intervention standard does not require a showing of inadequate representation, which is the stumbling block Piplack and Taylor fail to overcome for mandatory intervention.  The governing permissive intervention statute, section 387, subdivision (d)(2), does not mention that issue.  Because the analysis of permissive intervention fundamentally boils down to a discretionary weighing of whether Piplack and Taylor propose to add anything to this case the importance of which outweighs any objections

21

Accurso and In-N-Out may have to the court hearing it, we shall remand for the court to conduct the appropriate analysis and balancing.

We now turn to a more in-depth elaboration of our reasoning under each of the relevant provisions of section 387.

### 1. Mandatory Intervention

#### a. *Exclusive Delegation and Joint Agency*

As deputized proxies for the LWDA, Piplack and Taylor each have a public enforcement charge that qualifies as a significantly protectable interest. Any settlement of a PAGA claim within the ambit of their LWDA proxy authorizations by an interloper acting ultra vires—which is what Piplack and Taylor accuse Accurso of being—could potentially impair the legitimate proxy authority conferred upon Piplack and Taylor.

Since Piplack and Taylor possess a legal interest sufficient to trigger eligibility for intervention as-of-right, their entitlement to mandatory intervention turns on the issues of adequacy of representation and whether they are "so situated that the disposition of the action may impair or impede" their protectable interests. (§ 387, subd. (d)(1)(B).) Piplack and Taylor claim to have the *exclusive* right to litigate PAGA claims within the scope of their own LWDA notices. According to them, as first-to-file PAGA claimants on legal theories falling within the purview of Accurso's case, they have primacy over Accurso, who is a subsequent PAGA claimant against the same employer. Accurso's case, they suggest, cannot cover claims only Piplack and Taylor are authorized to pursue, yet Accurso appears to be attempting to litigate—and settle—those claims anyway.

We view this claim of "first-to-file" exclusivity as an overreach. The precedent Piplack and Taylor rely upon stands for the proposition (at least in their reading of the law) that any delegation of discretionary governmental

22

power is in the nature of a public trust and must be confined to one delegee. (See *County of Kern v. Pacific Gas & Electric Co.* (1980) 108 Cal.App.3d 418, 421; *Sacramento Chamber of Commerce v. Stephens* (1931) 212 Cal. 607, 609; *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (2003) 113 Cal.App.4th 465, 477.)  We should apply this principle, Piplack and Taylor contend, because, if we do not, Accurso's attempt to pursue an independent PAGA claim that they alone have been given authorization to prosecute by an executive branch agency would violate the doctrine of separation of powers.

We are unpersuaded.  *County of Kern, Sacramento Chamber of Commerce*, and *City of Burbank* all involve delegations of some form of legislative power.  Whatever the reach of their holdings in that setting, this line of cases has never been applied to delegations of law enforcement power. We decline the invitation to rely on it as a basis for giving primacy to one dueling PAGA claimant over another.  The premise of the argument is that, when the LWDA deputizes a PAGA claimant, the authority it confers must be construed as exclusive in light of these cases.  But that is not how we read the statutory scheme.  A basic objective of PAGA is to supplement the limited enforcement resources of the LWDA by leveraging the cumulative resources of private parties.

Because the "first to file" theory Piplack and Taylor propose would severely limit the number of private prosecutors the State may unleash to pursue any given employer—including large scale employers such as In-N-Out—their interpretation runs contrary to the statutory purpose.  (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1122 [" 'The Legislature's sole purpose in enacting PAGA was "to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor

23

Code as representatives of the Agency." ' "]; *Williams v. Superior Court* (2017) 3 Cal.5th 531, 546 [the legislature enacted PAGA to "expand[] the universe of those who might enforce the law, and the sanctions violators might be subject to, . . . to remediate present violations [of the Labor Code] and deter future ones."].)

Statutes conferring law enforcement authority on multiple civil prosecutors to pursue the same defendant for conduct arising from the same act or series of related acts are common.[16] Nothing about PAGA implicates separation of powers concerns simply because the Legislature chose to use a scheme of private deputization modelled on a traditional qui tam mode of enforcement. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382 ["[a]lthough the PAGA was enacted relatively recently, the use of qui tam actions is venerable, dating back to colonial times"], *abrogated on other grounds*, *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S.Ct. 1906, 1923–1925].)

Without doubt, the problems of case management created by the PAGA scheme can sometimes present novel and challenging issues.[17] But we think

---

[16] See e.g., California Labor Code section 2786; Business and Professions Code section 17204.

[17] Compare, e.g., *Wesson v. Staples the Office Superstore, LLC* (2021) 68 Cal.App.5th 746, 762–763 ("courts have inherent authority to ensure that a PAGA claim will be manageable at trial—including the power to strike the claim, if necessary") with *Estrada v. Royalty Carpet Mills, Inc.* (2022) 76 Cal.App.5th 685, 697 (disagreeing that striking difficult to manage claims is consistent with the statutory scheme, but acknowledging that "[c]ourts may still, where appropriate and within reason, limit the amount of evidence PAGA plaintiffs may introduce at trial to prove alleged violations to other unrepresented employees"), review granted June 22, 2022, S274340.

ordinary rules of civil procedure, supplemented where necessary and appropriate by rules governing coordination of complex cases,[18] are adequate to the task of resolving the difficult procedural problems that arise when multiple LWDA-deputized PAGA claimants sue the same target employer in different courts. (E.g. *Arias v. Superior Court* (2009) 46 Cal.4th 969, 986 ["Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government."].)[19] We see no need to employ the heavy artillery of constitutional argument to accomplish that end.

Alternatively, Piplack and Taylor offer a "joint agency" argument to justify their intervention in Accurso's case, but we find that argument to be no more persuasive than their more ambitious, constitutional effort to justify what they call exclusive delegation. This secondary line of argument rests on the common law of agency. A background principle of PAGA procedure enunciated in *Julian* is that more than one PAGA claimant may be deputized to pursue overlapping PAGA claims against a single employer. If this

---

[18] Code of Civil Procedure, section 404 et seq.; California Rules of Court, rule 3.501 et seq.; see *Doe v. Google, Inc.* (2020) 54 Cal.App.5th 948, 969.

[19] See *Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091 (claim preclusion); *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319 (issue preclusion). We have no occasion here to address the reach of these preclusion rules, except to note, as we did in *Moniz*, that the preclusive effect of a prior PAGA judgment will be determined by the court in which the defense of preclusion is asserted, not by the court rendering the judgment. (*Moniz, supra,* 72 Cal.App.5th at p. 84.)

25

principle is sound—and we think it is—Piplack and Taylor contend they should be viewed as joint agents, which means that Accurso cannot act alone. (See *Hill v. Den* (1879) 54 Cal. 6 [the sole act of one of two joint agents under a delegation from a trustee is void]; Rest.2d Agency § 41., com. a.)

It is true, of course, that our Supreme Court has described authorized PAGA claimants as "agents" of the LWDA (*Arias v. Superior Court*, *supra*, 46 Cal.4th 969, 986), but we doubt that in using this nomenclature the court intended to signal an intent to superimpose every intricacy of the common law of agency onto the PAGA statutory scheme. If Piplack and Taylor are viewed as joint agents pursuing a common enterprise with Accurso, they would have not just a right to enter plaintiff Accurso's case as interveners, but a veto right over any settlement to which they objected. We reject that notion. It has long been recognized that "common-law agency doctrines are inapplicable in certain statutory contexts" (Rest.3d Agency, Introduction), and we think this is one of them, particularly since a deputized proxy for the LWDA is not a "true agent." (See Rest.3d Agency, § 1.01; *id.*, com. b. ["Some statutes and many cases use agency terminology when the underlying relationship falls outside the common-law definition."].)

b. *Potential Impairment of Significantly Protectable Interests and Adequacy of Representation*

Retreating to narrower, more conventional grounds that they say establish their interests stand to be impaired or impeded by an inadequate representative, Piplack and Taylor emphasize that they are at risk of any adjudication or stipulated judgment entered by a claimant without proper authority foreclosing their claims. Taking the issue of impairment first, we agree that Piplack and Taylor do not need to establish that their interests *will* be impaired. The requisite showing is minimal, and is met where there

26

is a "substantial *probability*" that the interest will be so affected. (*Simpson Redwood Co. v. State of California, supra,* 196 Cal.App.3d at p. 1201; *WildEarth Guardians v. U.S. Forest Service* (10th Cir. 2009) 573 F.3d 992, 995 [establishing impairment element presents a minimal burden].) But on this record, we cannot say Piplack and Taylor have met even that modest burden.

Inadequacy of representation presents a closer issue. Without viable penalty claims covering expense reimbursement (which Piplack is pursuing) or claims for uniform donning and doffing time (which Taylor sought to pursue in her original complaint before deferring, procedurally, to Piplack), they insist that Accurso—as the self-appointed private attorney general for all PAGA claims against In-N-Out—has very little negotiating leverage against In-N-Out and cannot maximize the settlement value of his penalty claims because he failed to obtain LWDA authorization to cover uniform-related claims against In-N-Out. And, so they argue, because Accurso has no meaningful leverage and no authority to act as the State's proxy for the majority of Labor Code violations or for periods of time earlier than those covered by his LWDA notice, he likely was (and still remains) willing to compromise the State's interest too cheaply.[20]

---

[20] Pushing this argument to its limits, Piplack and Taylor attempt to frame the issue in jurisdictional terms. They contend the trial court lacks fundamental jurisdiction to entertain PAGA claims going beyond the Accurso LWDA notice and hence to enter judgment on a settlement purporting to release anything more. A judgment in such a case would be void, they argue. We disagree with that analysis and decline to go so far. In jurisdictional terms, the prospect that the scope of a settlement or adjudication of this case *may* go beyond Accurso's LWDA notice creates the prospect that to some extent the proceedings in this case may be in excess of the court's jurisdiction

Relying heavily on the presumption of adequate representation where an existing party is pursuing the same litigation objectives as the putative intervenor, Accurso and In-N-Out argue that Accurso shares the same objective with Piplack and Taylor as a deputized PAGA enforcement proxy and that the only daylight between him and these two are mere differences of strategy.[21]  They also point out that, in the end, there was no settlement here; that Piplack and Taylor have no valid basis to speculate about what might have been in an unconsummated settlement; and thus that the entire basis of the intervention motion from Piplack and Taylor—their asserted need to participate in the settlement approval process to guard against overbreadth—has evaporated.  According to Accurso and In-N-Out, Accurso's case is still at an early stage and nothing in his litigation record so far indicates a lack of zealousness.

Piplack and Taylor have a different view, of course.  Arguing against any presumption of adequate representation, they rely on *Berger*, a Federal

_____

(voidability), not that the court lacks fundamental jurisdiction (voidness). (*Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 221–222; see *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 291.)

[21] Accurso begins his version of this argument with the unexplained pronouncement that "As a preliminarily matter, there is no adequacy requirement in a PAGA action."  This contention appears to be a reiteration of his reliance on *Turrieta*; earlier in his responding brief, Accurso states that "the LWDA alone has the ability to express its views on the adequacy of any potential settlement of PAGA claims."  That appears to be the premise of the suggestion that any analysis of adequacy of representation can be disregarded in a PAGA action.  As explained above, we disagree that *Turrieta* controls, and in any event we reject the idea that there is anything in the PAGA statutory scheme that makes it unnecessary to consider adequacy of representation in an analysis of mandatory intervention under section 387, subdivision (b)(1)(D) in PAGA actions.

Rule of Civil Procedure 24(a)(2) mandatory intervention case where two North Carolina legislators successfully forced their way into a voting rights lawsuit against the North Carolina board of elections in which the board was defended by the state attorney general.  The legislators pointed out that North Carolina law expressly authorized them "to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution." (*Berger, supra,* 142 S.Ct. at p. 2202.)  The high court explained that, where a state has conferred the power to represent it on two agents of government, one in the legislative branch and one in the executive branch, it is inappropriate to apply a presumption that only one of these designated champions of the state's interest will adequately represent all relevant perspectives of the state.  (*Id.* at p. 2203.)  As a policy matter, the high court recognized the dangers of the race-to-the-bottom phenomenon some courts have described in the PAGA context using the rubric of "reverse auctions."[22]

---

[22] See *Berger, supra,* 142 S.Ct. at p. 2201 (construing Federal Rule of Civil Procedure 24(a)(2) to preclude the participation of multiple agents of the state that the Legislature contemplated representing its interests in litigation "would risk allowing a private plaintiff to pick its preferred defendants and potentially silence those whom the State deems essential to a fair understanding of its interests.")  "A reverse auction is said to occur when 'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with . . . the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.' [Citation.]  It has an odor of mendacity about it." (*Negrete v. Allianz Life Ins. Co. of North America* (9th Cir. 2008) 523 F.3d 1091, 1099; see *Uribe, supra,* 70 Cal.App.5th at p. 990 & fn. 2 [using the term in the PAGA context].)  While we have recognized that this dynamic is to some degree inherent in the PAGA statutory scheme (*Shaw, supra,* 78 Cal.App.5th at p. 263), we must not overlook the real potential for abuse in it.

This effort by Piplack and Taylor to invoke *Berger*—the United States Supreme Court's most recent application of Federal Rules of Civil Procedure, rule 24(a)(2)—is not without force. But in the end, we are unconvinced that *Berger* controls. The principal teaching of that case is that federal courts may not second-guess choices made by sovereign states about how to allocate governmental power. (*Berger*, *supra*, 142 S.Ct. at p. 2201.) At issue there was a contest between legislative branch and executive branch representatives vying to represent North Carolina's interests. We have no such issue of inter-branch dispersion of power in this case. To privilege a state executive over a legislature, the high court explained, "would . . . evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials" and "risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests." (*Ibid*.) "Nor are state interests the only interests at stake," the court said. "Respecting the States' 'plan[s] for the distribution of governmental powers' also serves important national interests." (*Ibid*.) Thus, the court held, "[p]ermitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." (*Id*. at p. 2202.)

There is no such titanic structural clash of governmental interests at issue here. Though we agree with Accurso and In-N-Out that *Berger* is distinguishable, we see no need to take the path they urge and apply a presumption in this case. We will instead resolve the adequacy of representation issue presented here, just as we do with the issue of potential impairment, under the basic rule that a section 387 movant always bears the burden of proof. Here, we conclude Piplack and Taylor fail to meet their

burden for two reasons.  *First*, and most fundamentally, they did not provide the trial court with *any* of the pertinent LWDA notices, Accurso's or theirs.[23] Compare, for example, the detailed record on this point in *Uribe*, *supra*, 70 Cal.App.5th 986, 992–993, 1003–1005.  That case—which Piplack and Taylor featured prominently in their arguments before the trial court—should have provided a road map on the issue of inadequate representation. All we have here, by contrast, is argument from counsel unsupported by record citations.

Counsel for Piplack and Taylor made various representations to the trial court about Accurso attempting to litigate and settle PAGA claims exceeding the scope of his LWDA authorization, and they repeat those representations on appeal, but they appear to have been so determined to swing for the fences with broad legal arguments designed to secure a paramount role for themselves in PAGA litigation against In-N-Out that they overlooked the basic task of delineating what they claim is the limited scope of Accurso's LWDA authorization, which was the key to backing up their claims of inadequate representation.  To carry out that task, they needed to produce competent, timely-produced evidence in support of their motion to intervene.  Given their failure to do so, the trial court properly denied

---

[23] On our own motion (see Evidence Code section 459), we take judicial notice under Evidence Code section 452, subdivision (h) that LWDA notices may be requested under the California Public Records Act.  (Govt. Code § 7920.000 et seq.)

31

mandatory intervention—not because *Turrieta* governs, but for the more prosaic reason that Piplack and Taylor failed to bear their burden of proof.[24]

*Second*, the position Piplack and Taylor take on adequacy of representation reduces to a claim that Accurso *attempted* to settle his case on terms to which they would have objected and thus, as the proceedings in his case move forward, Accurso cannot be trusted to stay within the boundaries of his LWDA authorization. These suspicions about what might happen as the case proceeds are insufficient to justify mandatory intervention at this stage of the case. Although the requisite showing a proposed intervener must make is a modest one, we agree with Accurso and In-N-Out that Piplack and Taylor have failed to meet it. In the absence of an actual settlement demonstrating that Accurso exceeded the scope of his LWDA authorization, the mere potential that Piplack's and Taylor's interests "may be" unable or unwilling to represent their interests in a future, hypothetical settlement is speculative.

Boiled down to its essence, then, our analysis of mandatory intervention is simple and straightforward: Piplack and Taylor failed to support their intervention motion properly and they filed it prematurely, before any settlement was submitted for approval.

---

[24] Cf. *Callahan*, *supra*, 42 F.4th at pp. 1021–1022 ("[PAGA claimant] Neverson . . . argues that [PAGA claimant] Callahan was not properly deputized to pursue certain claims that were a part of . . . [Callahan's PAGA] settlement due to the statute of limitations having run on those claims. However, even if Neverson is right, she does not establish that *she* is the proper party to pursue the claims for which Callahan was not properly deputized." (Italics in original.)).

## 2. Permissive Intervention

Our analysis differs with respect to permissive intervention. To begin with, we touch briefly on the demands of the PAGA settlement process. We emphasized in *Moniz* that, "[i]n review and approval of a proposed [PAGA] settlement . . . , a trial court . . . must scrutinize whether, in resolving the action, a PAGA plaintiff has adequately represented the state's interests, and hence the public interest." (*Moniz, supra,* 72 Cal.App.5th at p. 89.) In analyzing the section 902 "aggrieved party" issue in that case, we stated that "where two PAGA actions involve overlapping PAGA claims and a settlement of one is purportedly unfair, it follows that the PAGA representative in the separate action may seek to become a party to the settling action." (*Id.* at p. 73.) In that scenario, do nonparty PAGA claimants with overlapping claims have something significant to add to the settlement approval process? We think they may, and we are of the view that permissive intervention supplies a means to make sure the perspective of potentially affected non-party PAGA claimants is included in the settlement approval process.

Naturally, the proponents of a hard-won settlement will have little or no incentive to point out that the proposed settlement terms exceed anyone's authority; that the releases given are overbroad; that the consideration is inadequate; or that the allocation of money to be paid is in any respect unfair. As a result, trial courts are often faced with the sometimes challenging task of spotting deficiencies in a proposed PAGA settlement without assistance from anyone other than participants to the settlement negotiations.[25] But in

---

[25] The LWDA, as a practical matter, appears rarely in these cases. When it enacted PAGA in 2003, the Legislature was concerned that the limited resources available to the LWDA impeded robust enforcement of

33

situations where PAGA claimants with their own overlapping claims in other pending cases show up and wish to provide input, we see no reason why they should not be given a seat at the table. And should trial courts wish to ensure that such PAGA claimants are meaningfully involved in the settlement approval process, permissive intervention *even before the settlement approval process begins* may be a way to ensure that they are fully prepared to do so.

In defense of the trial court's out-of-hand dismissal of permissive intervention after concluding that *Turrieta* controls, Accurso suggests that Piplack and Taylor failed to present their motion for intervention under section 387, subdivision (d)(2) in a timely manner. According to him, they "sought to intervene only after failing to obtain a strong-arm consensus among six different law firms regarding an agreement on the allocation of attorneys' fees between the firms at the outset of joint prosecution," and "[o]n this basis alone," we "should affirm the trial court's decision denying permissive intervention." We disagree. Piplack and Taylor point out, correctly, that under section 387 timeliness measures from " 'the date the proposed interveners knew or should have known their interests in the litigation were not being adequately represented.' " (*Lofton v. Wells Fargo*

---

wage-and-hour laws. According to Piplack and Taylor, the problem of limited state enforcement resources remains a concern under the PAGA regime, just in a different form. Attached to Piplack and Taylor's motion to intervene is a budget change proposal (BCP) submitted to the Governor's Department of Finance in April 2019. This 2019 BCP reported, "Seventy-five percent of the 1,546 settlement agreements reviewed by the PAGA Unit in fiscal years 2016-2017 and 2017-2018 received a grade of fail or marginal pass, reflecting the failure of many private plaintiffs' attorney[s] to fully protect the interests of the aggrieved employees and the state."

*Home Mortgage* (2018) 27 Cal.App.5th 1001, 1013.) The record shows that they brought their motion to intervene within a few weeks of learning that settlement activity in Accurso's case appeared to be on the immediate horizon.

In-N-Out, for its part, contends that, if granted permissive intervener status, Piplack and Taylor would "disrupt" the litigation. The trial court made no such finding, and the proposed complaint-in-intervention from Piplack and Taylor does not suggest that they wish to expand the scope of the litigation on the merits. Section 387, subdivision (d)(2) contemplates that a non-party may seek to join a case if it has "an interest in the success of either of the parties, *or in an interest against both*." (Italics added.) By raising the issue of exclusive concurrent jurisdiction, Piplack and Taylor put in play a set of prudential judicial comity concerns that do not neatly align with the interests of either Accurso or In-N-Out. It is evident to us that this was an important new perspective. Neither of the parties had an incentive to raise the issue; what Piplack and Taylor proposed did not enlarge the scope of the case; it burdened the court with nothing more than hearing the stay motion; and, arguably, in the long run they sought to suggest a judicial economy measure that might save judicial time in multiple courts, not take up more of it.

In-N-Out argues that exclusive concurrent jurisdiction is an affirmative defense that a defendant must raise by plea in abatement, and that it had no obligation to assert such a defense in this case. Granted, the issue of exclusive concurrent jurisdiction is typically raised by defendants, but as we read the cases no court has ever said only a defendant can raise the issue. Given the nature of the exclusive jurisdiction—it is a policy rule of judicial

35

comity (*Shaw*, *supra*, 78 Cal.App.5th at p. 256[26])—that would make no sense. Certainly, a court may raise the issue on its own motion. And since a court may raise it sua sponte, we see no reason why an intervener may not propose to raise it where no one else has done so, as Piplack and Taylor did here. Accordingly, we will remand with directions that the court proceed to consider Piplack and Taylor's motions for permissive intervention and for a stay, weighing arguments they make in favor of staying the case (fully or partially) against any arguments Accurso and In-N-Out wish to offer for why the motion should not be heard or should be denied.

For guidance on remand, we emphasize three points. *First*, on this record—because of the narrow, procedural issue Piplack and Taylor propose to litigate (i.e., exclusive concurrent jurisdiction in support of their motion for a stay)—the issues of permissive jurisdiction and for a stay are closely intertwined. While these two issues are formally distinct, the resolution of the stay motion will as a practical matter dictate the outcome of the permissive intervention motion because the court's evaluation of the exclusive concurrent jurisdiction issue will determine whether Piplack and Taylor have something to add to this litigation that neither of the existing parties can bring (or is willing to bring) to the case.

*Second*, we have no intention of placing a thumb on the scale of what should happen when the trial court decides the motions for permissive intervention and for a stay. Nothing we have said in this opinion is meant to hint, without saying directly, that we think the best exercise of discretion

---

[26] See *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 764–765, 769; *Childs v. Eltinge* (1973) 29 Cal.App.3d 843, 854–855.

36

must be to order a stay, fully or partially. We express no such view. We are simply remanding so that discretion may be exercised according to the correct legal criteria. As we see it, our treatment of permissive intervention in this case simply confirms the availability of a case management tool busy trial judges may wish to utilize in managing PAGA cases when a potentially valuable source of information is available. Whether they use that tool is committed to their sound discretion.

*Third*, in the event the court were to issue a stay, we do not view the form of the stay as a binary issue that must be decided definitively for Piplack and Taylor, or for Accurso and In-N-Out. It may be, for example, that depending on the status of other proceedings Piplack and Taylor claim have priority over this one,[27] the court might wish to consider granting

---

[27] We understand that, while this appeal has been pending, circumstances have changed in the Orange County case. That court initially denied In-N-Out's motion to compel arbitration, and In-N-Out appealed in the Fourth District Court of Appeal. While the appeal there was pending, the United States Supreme Court decided *Viking River Cruises, Inc. v. Moriana*, *supra*, 596 U.S. ___, 142 S.Ct. 1906, which reversed in part and affirmed in part the California Supreme Court's holding in *Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*, 59 Cal.4th 348 that arbitration clauses requiring submission of PAGA claims to arbitration are not preempted under the Federal Arbitration Act. The mixed result in *Viking River* led to a mixed result in In-N-Out's appeal in the Orange County action. The Court of Appeal reversed the denial of In-N-Out's motion to compel arbitration of Piplack's individual PAGA claim (sending that component of his PAGA claim to arbitration), but affirmed with respect to his representative PAGA claims on behalf of In-N-Out employees other than himself (which presumably means Piplack is now actively pursuing a PAGA case against In-N-Out in Orange County). (*Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1293, review granted June 14, 2023, S279546.)

37

permissive intervention for the limited purpose[28] of giving Piplack and Taylor a defined role in the case commensurate with the scope of their LWDA authority, and staying the proceedings only as to certain issues that they may be entitled to litigate in another forum.

For example, in the absence of formal coordination under the rules governing coordination of complex cases, we see no reason why trial judges in overlapping PAGA cases may not communicate amongst themselves to determine whether, say, discovery might be coordinated in the interest of judicial economy. In federal multidistrict litigation, that is common.[29] And whether a party seeking approval of a settlement has engaged in cooperative discovery under such a coordinated discovery plan is sometimes a factor courts take into account in the settlement approval process.[30] In providing guidance on remand, we mention coordinated discovery for illustrative purposes to emphasize that we see the exclusive concurrent jurisdiction issue as a discretionary one that may be resolved in any number of ways designed to maximize efficiency, while at the same time allowing all PAGA claimants

---

[28] Limited purpose interventions are permissible. (*Carlsbad Police Officers Association v. City of Carlsbad*, *supra*, 49 Cal.App.5th at p. 151 ["a trial court has inherent power to place *reasonable* conditions on intervention." (Italics in original.)].)

[29] E.g., *Phipps Group v. Downing* (*In re Genetically Modified Rice Litigation*) (8th Cir. 2014) 764 F.3d 864, 866; *In re Air Crash Disaster at Florida Everglades on December 29, 1972* (J.P.M.L. 1973) 360 F.Supp. 1394, 1395.

[30] E.g.*, In re Yahoo! Inc. Customer Data Security Breach Litigation* (N.D. Cal., July 22, 2020, No. 16-MD-02752-LHK) 2020 WL 4212811, page *13, affirmed (9th Cir., June 27, 2022, No. 20-16633) 2022 WL 2304236.

in overlapping case scenarios to participate in litigation in which they have an interest but where the requisites for mandatory intervention have not been satisfied.

## IV. DISPOSITION

The order denying intervention is vacated and the cause is remanded for further proceedings consistent with this opinion.  Appellants Piplack and Taylor shall recover their costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

Trial Court:        Superior Court of California, County of Sonoma

Trial Judge:        Hon. Jennifer V. Dollard

Counsel:        Aiman-Smith & Marcy, Randall B. Aiman-Smith,
        Reed W.L. Marcy, Hallie von Rock, Brent A. Robinson;
        Lavi & Ebrahimian, Joseph Lavi, Jordan D. Bello,
        Vincent G. Granberry; Law Offices of Sahag Majarian II
        and Sahag Majarian II for Movants and Appellants.

        Polk Kabat, Mark G. Humenik for Tracy Chen in her
        Representative Proxy and Private Attorney General
        Capacity on Behalf of the State of California as Amicus
        Curiae on behalf of Movants and Appellants.

        Lebe Law, Jonathan M. Lebe, Zachary T. Gershman,
        Brielle D. Edborg for Plaintiff and Respondent.

        Sheppard, Mullin, Richter & Hampton, Paul S. Cowie,
        John D. Ellis, Sami Hasan, Amanda E. Beckwith for
        Defendant and Respondent.